IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**WILLIAM MITCHELL,**

                **Plaintiff,**

        v.                       CASE NO.  07-3318-SAC

**KENNETH McGOVERN,**
**et al.,**

                **Defendants.**

## O R D E R

This civil rights complaint, 42 U.S.C. § 1983, was filed by an inmate of the Douglas County Correctional Facility, Lawrence, Kansas (DCCF).  Plaintiff sues the Douglas County Sheriff, the jail administrator, and several staff members at the jail.  As the factual basis for his complaint, Mr. Mitchell alleges that on November 15, 2007, he was assaulted at the DCCF by another inmate "due to error by jail officials."  He further alleges that from October 22 to November 15, 2007, he informed jail staff on more than four separate occasions that he feared for his safety due to threats from other inmates.  He also alleges the inmate that attacked him was known as violent by staff and had previously threatened plaintiff.  He claims he has been mentally and physically scarred.

Plaintiff asserts that his right to be free of cruel and unusual punishment under the Eighth Amendment was violated.  In support, he claims he was housed in an unsafe environment, because defendants McGovern and Massey failed to implement policies and regulations to make DCCF safer, as well as to train jail staff on how to protect inmates from other violent inmates and how to respond to violent incidents.  He further claims that defendants Dillon,

Spurling, and Godinez ignored his requests for protection, and the attack could have been prevented had they properly responded to those requests. He also claims that defendant Freeman "allowed a violent inmate to be free from his cell unattended," and "jail staff" violated jail policy by letting the inmate out of his cell without a security escort. Plaintiff alleges he is still housed near the inmate that attacked him.

For relief, plaintiff asks that the Douglas County Sheriff be required to "put together intense training program" for jail staff on how to handle violent inmates. He also seeks $200,000 in punitive damages, and $500,000 for pain and suffering.

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES**

Plaintiff has filed an Application to Proceed Without Prepayment of Fees (Doc. 2), and has attached a "Commissary Statement" in support of his application. 28 U.S.C. § 1915(b)(1) requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account over the preceding six months was $15.33, and the average monthly balance is not provided. The court therefore assesses an initial partial filing fee of $3.00, twenty percent of the average monthly deposit, rounded

to the lower half dollar[1]. Plaintiff will be given time to pay this initial partial filing fee. If he fails to pay the fee in the time allotted, this action may be dismissed without further notice.

**SCREENING**

Because Mr. Mitchell is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is subject to being dismissed.

**FACTS FROM PLAINTIFF'S EXHIBITS**

Plaintiff attaches exhibits to his complaint, which are therefore incorporated into the complaint. These exhibits contain a portion of the jail administrative record regarding his claims. Plaintiff's exhibits indicate on October 22, 2007, he filed an "Inmate Request stating his safety was being threatened in "max pad" and asking to be moved to "medium pad." He alleges he was told by defendant Spurling he could not be moved until he was physically harmed. On the same date he sent a similar "inmate request" to defendant Dillon, who asked if plaintiff had reported any of the threats to staff and advised him to specify the issues he was having. On October 25, 2007, plaintiff sent another inmate request

---

[1] Pursuant to 28 U.S.C. §1915(b)(1), plaintiff remains obligated to pay the full $350.00 district court filing fee in this civil action. Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2).

3

to defendant Dillon stating he had reported threats to "pod officers" and Officer Porter had heard the whole pod yelling obscene remarks at him.  Dillon responded that Mr. Mitchell must follow the established process of first communicating with his pod officer, and if not satisfied to address his concerns to the Shift Supervisor, and after that he should contact defendant Dillon and provide all documentation of the administrative process.  Plaintiff also exhibits an inmate request dated October 30, 2007, to Deputy Godinez, stating two inmates, Glover and Hooks, are plotting to run into his cell when it is opened by a guard and informing Godinez that he would hear threats if he listened to their conversations over the intercom.  CR Munoz responded that Deputy Godinez had spoken with Mr. Mitchell about the matter.  On December 8, 2007, plaintiff filed an inmate request to defendant Freeman noting Freeman and other officers had seen inmate Dudley attack plaintiff in the day room, and asking if a report was written about the incident and why he was not being "taken off AD Seg" and could not be "classified in a different pod."  Plaintiff was informed that each officer present wrote a report, and the incident had nothing to do with his status.  He was informed that his classification was "due to your disciplinary history and the recent problems you claim to have with several other inmates."  On December 11, 2007, plaintiff wrote an "Inmate Grievance" complaining of conditions such as inadequate "free time" in ad seg, and stating that since Dudley attacked him on free time, he has been "seriously paranoid" while residing in max pod.  In a response from Cpl. Chris Morris, plaintiff was again referred to the administrative grievance process in the inmate handbook and asked to provide documentation indicating

4

he had followed the steps in that process.  Plaintiff was also informed that he needed to be specific in his grievances and provide names and dates.  He was finally informed that the assault occurred as a result of officer error in not securing the recreation yard door, and that the officer(s) responsible "could/will face disciplinary action."  Plaintiff was also advised that this did not mean he needed to be moved out of the maximum pod housing unit. Having considered all the facts alleged in plaintiff's complaint and revealed in his exhibits, the court finds as follows.

**FAILURE TO ALLEGE PERSONAL PARTICIPATION OF ALL DEFENDANTS**

Section 1983 imposes liability for conduct which causes the complainant to be subjected to a deprivation of a right secured by the Constitution or laws of the United States.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  In order to establish a cognizable claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that defendants, acting under color of state law, deprived him of a federally protected right and that the named defendants were personally involved in the deprivation.  A supervisor may be found liable under § 1983 only on the basis of his or her own acts or omissions.  A supervisor's liability may not be predicated solely upon a theory of respondeat superior.  McKay v. Hammock, 730 F.2d 1367, 1374 (10th Cir. 1984)(A supervisor cannot be held liable in either an official or individual capacity in the absence of some affirmative link between the alleged constitutional violation and the supervisor's exercise of control or a failure to supervise.), *citing* Rizzo, 423 U.S. at 371; Gagan v.

5

Norton, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), cert. denied, 513 U.S. 1183 (1995).

In the instant case, plaintiff does not allege facts demonstrating personal participation by each and every named defendant in the alleged failure to protect, which is the basis for his complaint.  Instead, his allegations indicate he believes defendants McGovern and Massey are liable solely because of their supervisory capacities at the jail.[2]  He generally claims they are liable because they failed to implement policies and train staff, but these allegations are completely conclusory.  Plaintiff does not describe a particular policy or training lacking at the jail, which could have prevented the assault upon him by another inmate.  It follows that plaintiff has not alleged facts showing the personal participation in the assault or failure to protect by these particular defendants.  Unless he does allege such facts, they may not be held liable for money damages.  Nor is he entitled to injunctive relief regarding policies based upon his conclusory allegations.  Instead, he must at least suggest what policies were missing and resulted in the assault.  Plaintiff will be given time to submit a supplement to his complaint alleging additional facts showing personal participation by these two defendants.

Plaintiff's allegations that defendants Spurling and Dillon

---

[2] To be held liable under § 1983, a supervisor must have personally participated or acquiesced in the complained-of constitutional deprivation. Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988). An "affirmative link" must exist between the constitutional deprivation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Id. at 1527.  This link is satisfied if "a supervisor has established or utilized an unconstitutional policy or custom." Id. at 1528.  Plaintiff does not describe any unconstitutional policy or custom, but very generally claims a lack of sufficient policy.

6

ignored his requests for protection are also conclusory in that he does not allege facts showing he made these defendants aware of particular threats, which they then ignored. Plaintiff's exhibits indicate he filed inmate requests prior to the assault addressed to Spurling and Dillon in which he very generally claimed his safety was threatened in max pod. However, rather than requesting protection or providing details on specific threats which might have led to protection, plaintiff sought only to be moved from max pod. It follows that plaintiff does not allege sufficient facts indicating these defendants failed to protect him from the attack by inmate Dudley.

Plaintiff was correctly informed by defendant Dillon in response to his grievances that he was required to follow the administrative procedures set forth in the inmate handbook in an orderly fashion, and that he needed to provide specific information regarding his grievances[3]. It is not clear from his exhibits that he ever follows this directive.

Plaintiff's exhibits indicate he actually informed defendant Godinez that two other inmates were threatening to enter his cell if

---

[3] Since the passage of the PLRA, a prisoner plaintiff has been and still is required to exhaust the available administrative remedies prior to bringing a civil rights action in federal court. 42 U.S.C. 1997e(a); see also Booth v. Churner, 532 U.S. 731 (2001); Porter v. Nussel, 534 U.S. 516, 524 (2002)(Prior exhaustion of administrative remedies in cases brought with respect to prison conditions or occurrences is mandatory.). The recent Supreme Court opinion holding that failure to exhaust is an affirmative defense, did not abrogate the statutory exhaustion requirement for prisoners. It merely relieved plaintiffs of the burden of pleading exhaustion in their complaint. Should process eventually issue in this action, it is possible defendants will raise the defense that plaintiff has not exhausted administrative remedies at the jail in an orderly and complete fashion. Plaintiff might then have this case dismissed without prejudice, but only after time has been wasted in federal court when perhaps he should be pursuing an action in state court, or attempting to fully and completely exhaust administrative remedies. Judicial and administrative remedies have time limitations within which they must be pursued or lost.

his door were accidentally left open and asked to speak to Godinez privately. The response indicates the grievance was not ignored as he claims, but that Deputy Godinez spoke to plaintiff. Again plaintiff fails to allege facts showing defendant Godinez had specific information regarding a potential assault, which Godinez ignored and which resulted in plaintiff's assault by inmate Dudley.

Plaintiff's grievances also suggest that defendant Freeman witnessed the actual assault by inmate Dudley. However, plaintiff does not describe any action defendant Freeman should have but did not take in response to the attack. Thus, plaintiff does not allege facts indicating defendant Freeman failed to protect him from the assault.

Plaintiff will be given time to file a Supplement to his Complaint in which he describes the personal acts or inactions of each and every named defendant in the alleged failure to protect. If he fails to allege additional facts showing personal participation by any of the defendants, this action may be dismissed without further notice against such defendant or defendants for failure to allege direct personal participation in unconstitutional acts.

**FAILURE TO ALLEGE SUFFICIENT FACTS IN SUPPORT OF CLAIM**

The court also finds that plaintiff does not allege sufficient facts to elevate his claim, which appears to be at most one of negligent conduct, to one of a constitutional failure to protect. As noted, to recover under § 1983, plaintiff must show a deprivation of rights secured by the Constitution and laws of the United States. Rizzo, 423 U.S. at 370-71. Plaintiff's complaint alleges the jail

staff's "failure to protect" him from assault by another inmate violated the Eighth and Fourteenth Amendments, only in general terms. The Supreme Court has made clear that prison officials have a duty to ensure the safety and protection of inmates:

> [P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. . . . Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

Farmer v. Brennan, 511 U.S. 825, 833-34 (1994)(internal quotation marks and citations omitted); Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: an objective component requiring the inmate show he was "incarcerated under conditions posing a substantial risk of serious harm"; and a subjective component requiring that defendants acted with the culpable state of mind referred to as "deliberate indifference." Id.; Wilson v. Seiter, 501 U.S. 294, 299 (1991). Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837 ("A prison official cannot be found liable under the Eighth

Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); Gonzales v. Martinez, 403 F.3d 1179, 1186 (10th Cir.), cert. denied, 546 U.S. 1003 (2005).  Deliberate indifference requires "a higher degree of fault than negligence."  Hovater v. Robinson, 1 F.3d 1063, 1066 (10th Cir. 1993) (other citations omitted); Farmer, 511 U.S. at 835.  A prison official's "failure to alleviate a significant risk that he should have perceived but did not" does not amount to the infliction of cruel and unusual punishment.  Id.

It follows that plaintiff must allege facts indicating defendants were actually conscious of a risk to him rather than that they should have been aware of possible danger.  Id.  The mere fact that an assault occurred does not establish the requisite deliberate indifference to plaintiff's constitutional rights.  Hovater, 1 F.3d at 1068.  Nor does an isolated attack by another inmate demonstrate a failure to protect.

Plaintiff's allegations and exhibits provided thus far at most support a claim that the assault on him by another inmate resulted from negligence of the staff member or members who left the door open to the yard.  A claim of simple negligence must be brought in state, rather than federal, court as it is not an adequate basis for claiming cruel and unusual punishment under the Eighth Amendment. The court concludes this action is subject to being dismissed for failure to state sufficient facts in support of a federal constitutional claim.  Plaintiff will be given time to supplement

10

his complaint with additional facts.  If plaintiff fails to cure the deficiencies in his complaint discussed herein in the time allotted, this action may be dismissed without further notice.

**OTHER MOTIONS**

The court has considered plaintiff's Motion to Endorse Witnesses (Doc. 3), Motion for Issuance of Summons (Doc. 4), and Motion to Appoint Counsel (Doc. 5).  Discovery in this action shall not proceed and summons shall not issue until the screening process is complete.  Accordingly, the court finds plaintiff's motions are premature and they will be denied at this time without prejudice. The court will issue summons if it determines that plaintiff's action should survive screening.  Plaintiff has no right to appointment of counsel in a civil rights action, and the matter is within the court's discretion.  A pro se plaintiff must allege facts, and is not required to provide legal authority, to support his claims.  It appears plaintiff is capable of alleging the facts upon which his claims are based.  Accordingly, the court denies his Motion to Appoint Counsel at this time.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 3.00.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the assessed partial fee as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty (30) days plaintiff is required to submit a Supplement to his Complaint in

11

which he alleges facts showing personal participation by each named defendant, and states additional facts supporting a claim of failure to protect under the Eighth Amendment.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Endorse Witnesses (Doc. 3), Motion for Issuance of Summons (Doc. 4), and Motion to Appoint Counsel (Doc. 5) are denied, without prejudice.

**IT IS SO ORDERED.**

Dated this 9th day of January, 2008, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge